IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


EQUAL EMPLOYMENT                                                              PLAINTIFF
OPPORTUNITY COMMISSION

VS.                                                      CIVIL ACTION NO.  2:05CV2074KS-MTP

EAGLE QUICK STOP, INC., d/b/a
SID'S DISCOUNT FUEL                                                          DEFENDANT


## MEMORANDUM OPINION AND ORDER

This cause is before the court on the filing by defendant Eagle Quick Stop, Inc., d/b/a

Sid's Discount Fuel ("Eagle Quick Stop") of a Motion for Summary Judgment and a Motion to

Strike.   From its review of all matters made a part of the record of this case as well as applicable

law, and being thus fully advised in the premises, the court FINDS that the motion to strike is not

well taken and should be denied and the motion for summary judgment is well taken and should

be granted.  The court specifically finds as follows:

### FACTUAL BACKGROUND

On June 22, 2004, Kimberly M. Thomas filed a Charge of Discrimination with plaintiff

Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated

against by her employer, defendant Eagle Quick Stop, on the basis of her race.  On February 2,

2005, Ms. Thomas filed an amendment to the Charge, alleging retaliatory discharge.  In its Letter

of Determination dated May 16, 2005, the EEOC found that although there was no evidence to

support Ms. Thomas' allegation of race discrimination, there was evidence to support her claim

of retaliation.  The EEOC also found that Eagle Quick Stop was an "employer" within the meaning of Title VII.  After unsuccessful attempts to settle the Charge, the EEOC filed a Notice of Failure of Conciliation in June, 2005 and commenced this action on September 30, 2005.  In its complaint, the EEOC alleges that Eagle Quick Stop violated section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), by placing Ms. Thomas on an indefinite leave of absence and subsequently discharging her because she had filed a Charge of Discrimination with the EEOC.  The Complaint alleged that Eagle Quick Stop was an "employer within the meaning of Title VII."

On December 15, 2006, Eagle Quick Stop filed a motion for summary judgment.  In its motion, Eagle Quick Stop argues that it has fewer than the fifteen employees required to be classified as an "employer" under Title VII and that therefore it cannot be sued by the EEOC and is entitled to judgment as a matter of law.  On January 31, 2007, Eagle Quick Stop filed a motion to strike the affidavits of Kimberly Thomas, Arica Barnes and Gail Fantop, submitted by the EEOC in opposition to the motion for summary judgment.

## MOTION TO STRIKE

The court will first address the motion to strike.  Eagle Quick Stop has moved to strike the affidavits of Kimberly Thomas, Arica Barnes and Gail Fantop, submitted by the EEOC in opposition to the motion for summary judgment, on the ground that they are not competent summary judgment evidence pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e) requires that affidavits submitted in support or in opposition to a motion for summary judgment "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

2

matters stated therein."  Ms. Thomas' and Ms. Barnes' affidavits set forth facts relating to, *inter alia*, Eddie Cleland's alleged supervision of employees and giving of work orders at Eagle Quick Stop, and the Eagle Quick Stop manager's allowing certain employees to work at Eagle Quick Stop while clocked in at Broadacre Travel Center, Inc. ("Broadacre) (owned by Eddie Malone, the same person who owns Eagle Quick Stop).   Eagle Quick Stop argues that the affidavits are not based on personal knowledge.  The court, however, agrees with the EEOC that these affiants are simply relating what they saw, heard or experienced while employees at Eagle Quick Stop and therefore the requirement of personal knowledge is met.  Eagle Quick Stop also argues that these two affidavits are disputed by the persons mentioned in the affidavits - in affidavits submitted with defendant's rebuttal brief in support of its motion for summary judgment.  However, this does not make these affidavits incompetent summary judgment evidence.  This simply creates a (potentially material) factual dispute.[1]   Accordingly, defendant's motion to strike Ms. Barnes' and Ms. Thomas' affidavits should be denied.

Eagle Quick Stop also moves to strike the affidavit of Gail Fantop, a paralegal at the EEOC, submitted by the EEOC to authenticate a summary prepared by Ms. Fantop of Eagle Quick Stop's payroll records.   Defendant argues that the analysis is unreliable and is not supported by admissible evidence.  However, the evidence the analysis is based on - defendant's own payroll and tax records produced by defendant during the course of discovery - would be

---

[1] Similarly**,** Eagle Quick Stop submits an additional affidavit from Ms. Barnes stating that she had been told by an EEOC employee how to word her prior affidavit (the one that is the subject of the motion to strike).  In response, the EEOC submitted an affidavit from that EEOC employee denying that allegation.  This dispute does not make the Barnes affidavit inadmissible for summary judgment purposes - again, this simply creates a (potentially material) factual dispute.

admissible as defendant's business records.  Moreover, summaries of evidence such as this one

are admissible pursuant to Rule 1006 of the Federal Rules of Evidence.  Accordingly,

defendant's motion to strike Ms. Fantop's affidavit should be denied.

<u>MOTION FOR SUMMARY JUDGMENT</u>

<u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  The party seeking summary judgment

bears the initial burden of informing the court of the basis for its motion and identifying those

portions of the record which it believes demonstrates the absence of a genuine issue of material

fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving

party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas

Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving

party to show with "'significant probative' evidence" that a genuine issue of material fact

actually exists.  *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (citation omitted).  To

overcome summary judgment, the non-movant may not rest on the pleadings, but must identify

specific evidence in the ... record demonstrating that there is a material fact issue concerning the

essential elements of its case."  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257.

"The moving party need not support its motion with affidavits or other evidence, but to defeat a

motion for summary judgment the nonmovant must present evidence sufficient to establish the

existence of each element of his claim as to which he will have the burden of proof at trial."

*Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation

omitted).  The nonmoving party must "do more than simply show that there is some metaphysical

doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence ...

will be insufficient" to defeat a properly supported motion for summary judgment.).

"[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy

the nonmovant's burden."  *Douglass*, 79 F.3d at 1429 (citation omitted).  The non-movant must

"set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at

256.

      When deciding a motion for summary judgment, the evidence submitted by the

nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that

evidence must be drawn in favor of the party opposing summary judgment.  *Anderson*, 477 U.S.

at 255.  The district court, therefore, "must not resolve factual disputes by weighing conflicting

evidence, ... since it is the province of the jury to assess the probative value of the evidence."

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (internal citation omitted).

Summary judgment is improper where the court merely believes it unlikely that the nonmovant

will prevail at trial.  *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir.

1962).  By contrast, summary judgment for the moving party is only proper when a rational

factfinder, looking at the record as a whole, could not find for the nonmoving party. *Matsushita*, 475 U.S. at 587.

"The mere existence of a disputed factual issue...does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Prof'l Mgrs., Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "With regard to 'materiality,' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Factual disputes that are irrelevant or that are unnecessary will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987) (citation omitted). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiffs' cause of action does not exist as a matter of law,...all other contested issues of fact are rendered immaterial." *Topalian v. Ehrmanl*, 954 F.2d 1125, 1138 (5th Cir. 1992), *reh'g denied*, 961 F.2d 215 (5th Cir. 1992).

<u>Analysis</u>

Title VII defines "employer" to include only those persons or entities having "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[2] 42 U.S.C. § 2000e(b). Therefore, companies with fewer than 15 employees cannot be sued under Title VII. *See Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 205 (1997); *Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198 (5th Cir. 1994). Any interpretation of the EEOC to assign the title of "employer" to a company is not controlling

---

[2] "Current or preceding calendar year" means the year the charge of discrimination was filed or the year preceding that year. *See Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir. 2000); *Dumas v. Mt. Vernon*, 612 F.2d 947, 979 (5th Cir. 1980). Thus, in this case the relevant time period is 2003 and 2004, as Ms. Thomas filed her charge of discrimination in 2004.

on courts.  *See Greenlees*, 32 F.3d at 200.

In support of its motion for summary judgment, Eagle Quick Stop points to the deposition testimony of Marsha Shores, a manager at Eagle Quick Stop, who testified that in 2004, she managed "around eight" cashiers in the store,[3] and the EEOC Affidavit of Ms. Thomas, which states that Eagle Quick Stop "employs eight persons besides the Manager."  In addition, Eagle Quick Stop has submitted Employee Earnings Summaries from May 2003 through May 2005 which indicate that Eagle Quick Stop never had more than 12 employees working at any given time during that period.[4]  Although payroll summaries for January through April 2003 are missing, it is clear from the EEOC's own summary of these payroll documents (discussed below), as well as the underlying documents themselves, that Eagle Quick Stop never had more than 12 employees for any of those four months.

The EEOC argues, however, that Mr. Malone should be counted as an Eagle Quick Stop

---

[3] The EEOC asserts that although Ms. Shores testified that she "managed" eight employees for Eagle Quick Stop, she did not definitively answer how many employees worked for Eagle Quick Stop.  For this assertion, the EEOC simply cites to "Marsha Shores deposition," with no page number.

[4] The EEOC argues that the payroll summaries are inadmissible because they were not previously provided to the EEOC.  However, Eagle Quick Stop has demonstrated that these summaries were mailed and also emailed to the EEOC on September 15, 2006, as an attachment to Defendant's First Supplement to Initial Disclosures, and were also referenced by bates number in that same Supplement to Initial Disclosures.  Accordingly, this argument is without merit.  The EEOC also criticizes Eagle Quick Stop's failure to provide affidavits describing or explaining the summaries' meaning, attesting to their accuracy or completeness or attesting that they identify and/or reflect all persons employed by Eagle Quick Stop from January 2003 through December 2004.  However, Sherrie Kinton, Eagle Quick Stop's bookkeeper, authenticated them during her deposition and they would clearly be admissible at trial as business records. Ms. Kinton testified in her deposition that the payroll summaries identify all persons who worked at Eagle Quick Stop during a given time period and that if a person is no longer listed on the payroll summary, it means that they no longer work there.

employee, alleging that he worked there every three to four months.  The court disagrees.  The record is clear that Mr. Malone is the owner of Eagle Quick Stop, not its employee, and Mr. Malone's deposition testimony submitted by Eagle Quick Stop establishes that the only time he worked at Eagle Quick Stop during the relevant time period was for one hour after Hurricane Katrina.  The EEOC also argues that Mr. Cleland should be counted as an Eagle Quick Stop employee.  However, the deposition testimony and his affidavit establishes that he was not an employee of Eagle Quick Stop, never received any compensation from Eagle Quick Stop, was never on its payroll and was never "district manager" as alleged by the plaintiff.  There is some conflicting evidence in the record, however, regarding Mr. Cleland's precise role at Eagle Quick Stop.  Thus, for the sake of argument, the court will include Mr. Cleland as an employee.  This still does not help the EEOC, however, because it only raises the maximum number of employees in any given month of 2003 or 2004 to 13.

The EEOC further argues that the payroll summaries submitted by Eagle Quick Stop show only the employees who were paid during the pay period, and do not reflect all employees who were actually employed.  For this assertion, the EEOC simply cites to "Malone," without the description, date or page number of this alleged deposition testimony.  This is insufficient to meet the EEOC's burden of identifying specific facts in the record to establish a genuine issue of material fact.  Moreover, such an assertion is refuted by the deposition testimony of Ms. Kinton that the payroll summaries show everyone who worked in a particular pay period, and if a person's name does not appear on the payroll summary, that person is no longer an employee.

Finally, the EEOC has submitted the analysis of payroll documents prepared by Ms. Fantop (the subject of the motion to strike) to support its assertions that: in 2003 and 2004, Eagle

8

Quick Stop issued W-2 forms to 31 employees and 19 employees respectively, some of whom were not included in the payroll summaries; and that during 2003 and 2004, Eagle Quick Stop paid employees who are not listed on the payroll summaries, as evidenced by payroll reports, weekly time sheets and W-2 forms.

For the year 2003, this payroll analysis reveals that - at most- there was only one month (September) when Eagle Quick Stop had 15 or more employees.  If Mr. Cleland were included as an employee for the sake of argument,[5] there would be only three consecutive months where Eagle Quick Stop had 15 or more employees.  On the payroll analysis, the EEOC notes that there is one employee listed on a payroll summary for January for whom Eagle Quick Stop has not produced any W-2 records and there are two employees listed on weekly timesheets for certain time periods in 2003 (April through June, and December, respectively) for whom Eagle Quick Stop has not produced any payroll summaries or W-2's.  This does not help the EEOC, however.  First, there is no basis to count the employee listed on the payroll summary only for January in any additional months.  Indeed, Ms. Kinton testified in her deposition that the payroll summaries show the employees who worked during that time period, and if an employee is no longer listed on a payroll summary it means that they no longer work there.  As for the other two employees, there is similarly no basis for counting them in any period other than when they appeared on weekly timesheets.  Moreover, a lack of a W-2 for these employees is meaningless because a W-2 would not show *when* in 2003 they worked.

---

[5] For this purpose, Mr. Cleland would be included only from January 2003 through November 2003, which is when Ms. Barnes avers that Mr. Cleland left Eagle Quick Stop (in her affidavit, Ms. Thomas did not give an end date for Mr. Cleland's alleged employment at Eagle Quick Stop, but merely stated that he came into the store often from November 2002 to May 2003.

As for 2004, the court notes that as a threshold matter, Eagle Quick Stop has established -
by Ms. Thomas' deposition testimony - that the employees listed separately as "Sherry L.
Beasley" and "Jeanna" are actually the same person - Jeanna is the nickname used by Ms.
Beasley.  Thus, "Jeana" needs to be deducted for the purpose of this analysis.

The 2004 payroll analysis reveals that there is no month where Eagle Quick Stop had 15
or more employees.  Again, however, as for 2003, the EEOC points out that there are several
employees listed on either weekly time sheets or a payroll report for whom Eagle Quick Stop has
not produced any payroll summary or W-2 records, and there is one employee listed on W-2
records for whom Eagle Quick Stop has not produced payroll records.  As for the employee listed
on the W-2 records for whom Eagle Quick Stop has not produced payroll records, for the sake of
argument the court will include her for every month of 2003, because it is impossible to tell
exactly when she worked.  As for the one employee allegedly listed on a "Close Payroll Report"
for November 2004, but for whom no payroll summary or W-2 records have been produced, the
court has searched the documents upon which the EEOC's payroll analysis was based (provided
to the court at the pre-trial conference) and has been unable to locate this document.  As for the
employees listed on either weekly time sheets or a payroll report for whom Eagle Quick Stop has
not produced any payroll summary or  W-2 records, as discussed above, there is no basis to
believe that these other employees should be counted for any period other than when they
appeared on weekly timesheets or a payroll report.  Thus, adding Ms. Bell, but excluding the
others, there is still not even one month during 2004 where Eagle Quick Stop had 15 or more
employees.

The EEOC also argues that Eagle Quick Stop has produced W-2 forms allegedly showing

33 employees for 2003 and 19 for 2004.  This is a red herring.  As discussed above, W-2 forms

do not indicate specifically when in 2003 or 2004 the particular employees worked and are

therefore useless for the purpose of determining how many employees worked in a 20-week

consecutive time period.

Finally, the EEOC argues that Eagle Quick Stop had an Employee List for the time that

Ms. Thomas alleges discrimination that contains the names of 51 employees.  However, Eagle

Quick Stop has submitted deposition testimony from Ms. Shores that this was actually a

complete list of employees who had worked at Eagle Quick Stop since it had opened, and that it

also contained employees who had been "borrowed" from Broadacres when they first opened the

store.  Thus, this list does not create a genuine issue of material fact as to whether Eagle Quick

Stop had 15 or more employees for twenty consecutive weeks during 2003 or 2004.

Thus, the court finds that the EEOC has failed to meet its burden of demonstrating a

genuine issue of material fact as to whether Eagle Quick Stop had fifteen or more employees

during the relevant time period and summary judgment for defendant is warranted.[6]

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion to strike

---

[6] The EEOC argues in its opposition brief that if the court grants the summary judgment motion, it would seek leave to amend its Complaint to raise the "integrated enterprise" theory and would argue that Eagle Quick Stop and Broadacre operated as an integrated enterprise and should be combined for purposes of meeting Title VII's 15-employee requirement.  In its opposition brief, the EEOC raises this jurisdictional theory for the first time, discussing it at great length and providing evidence to allegedly establish genuine issues of material fact on the issue of whether defendant had 15 or more employees under this theory.  Had the EEOC wanted to amend its complaint, it was required to do so pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. However, the EEOC has not actually moved to amend its complaint or to add Broadacre as a defendant; it has merely stated its intention to do so in the event that the motion for summary judgment is granted.  Accordingly, it would be inappropriate for this court to consider the facts submitted by the EEOC in support of the "integrated enterprise" theory in ruling on defendant's motion for summary judgment.

[ # **90**] is denied and defendant's motion for summary judgment [ **# 78**] is granted.  Plaintiff's complaint is dismissed with prejudice.

SO ORDERED and ADJUDGED on this, the 28th day of February, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE