IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                              PLAINTIFF

v.                                                                     CIVIL ACTION # 2:05cv2074-KS-MTP

EAGLE QUICK STOP,
d/b/a SID'S DISCOUNT FUEL                                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the August 21, 2007, Order [# 108] requiring the parties

to brief the issue of when the EEOC knew or should have known that it did not have a claim

against the Defendant Eagle Quick Stop.  Based on the evidence submitted and arguments raised

by both parties, the Court determines that the EEOC knew or should have known that it did not

have a claim against Eagle as of January 1, 2007, and that costs and attorneys fees incurred by the

Defendant after that date should be awarded to Eagle as the prevailing party.

## PROCEDURAL HISTORY

Kimberly Thomas worked as an assistant manager for Eagle Quick Stop, a convenience

store located in Hattiesburg.  In June of 2004, Thomas was reassigned as a cashier and relieved

of her management duties.  Claiming she was demoted because of her race, Thomas filed a

complaint with the Equal Employment Opportunity Commission.  The Commission began

investigating Thomas's charge against Eagle in June of 2004.  Shortly after her claim was filed,

Eagle placed Thomas on leave from the store.  Thomas subsequently amended her complaint to include a claim or retaliatory discharge.

Eleven months later, the EEOC determined that the evidence was "insufficient" to support the original charge of racial discrimination against Eagle, but that evidence did exist to support the added claim of retaliatory discharge.  After conciliation efforts failed, the Commission brought suit against Eagle on September 30, 2005, for the allegedly discriminatory discharge.  On December 15, 2006, Eagle moved for summary judgment on the basis that it was not an "employer" within the meaning of federal law.[1]  This Court granted summary judgment for the Defendant on February 28, 2007.  The Court then entered a judgment dismissing the case with prejudice on March 12, 2007.

Thereafter, the Defendant moved for the award of attorney's fees under 42 U.S.C. §2000e-5(k) and submitted a bill of costs.  On August 21, 2007, the Court entered an order granting in part and denying in part the Defendant's motion for attorney's fees.  Finding that the Defendant had prevailed, and that the EEOC's suit was without basis, the Court decided to "allow both sides an additional opportunity to brief at what time the lack of basis was known or should have been known by the EEOC."

STANDARD OF REVIEW

Congress has authorized that under Title VII, a "court, in its discretion, may allow the

---

[1]Title VII defines "employer" to include only those persons or entities having "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Therefore, companies with fewer than 15 employees cannot be sued under Title VII. *See Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 205 (1997); *Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198 (5th Cir. 1994)**.**

prevailing party...a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k).  Although prevailing plaintiffs are "presumptively entitled to reasonable attorney's fees," federal courts have "set a more rigorous standard for awarding attorney's fees to prevailing defendants." *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001).  The district court may only award a prevailing defendant attorney's fees in a Title VII action if: (1) the defendant was the prevailing party; and (2) the plaintiff's suit was frivolous, unreasonable, or without foundation, or the plaintiff continued to litigate after it became clear that her suit was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978).[2]

Relevant factors in determining when a suit was frivolous or without foundation include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the district court dismissed the case or held a full-blown trial." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).  Yet the factors used to determine frivolity "are neither rigid nor dispositive." *Crunk ex rel. Kenneth P. v. San Antonio Indep. Sch. Dist.*, 2004 WL 2397573 at *3 (W.D. Tex. Sep. 8, 2004). The Fifth Circuit has further instructed that "a bad faith finding is not required for an award of attorney's fees" to a prevailing defendant. *In re E.E.O.C.*, 207 Fed. Appx. 426, 433 (5th Cir. 2006). The decision to award attorneys fees to a prevailing defendant is within the discretion of the district court. *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000).

When considering whether to award fees to a prevailing defendant, the district court must

---

[2]*See also Chacon v. Ezekiel*, 957 F. Supp. 1265, 1266-67 (S.D. Fla. 1997) ("this court has the discretion to award Defendant attorney's fees in this case only if: (1) Defendants are "prevailing parties", and (2) Plaintiff's suit was frivolous, unreasonable or without foundation, or Plaintiff continued to litigate after it became clear that her suit was frivolous, unreasonable, or without foundation.").

exercise caution to avoid the possible "chilling effect" the award creates. *See Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986).[3]  The test for a prevailing defendant to obtain attorneys fees is purposefully more stringent, and "is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail." *Myers*, 211 F.3d at 292 (quoting *Aller v. New York Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984)).

<u>ANALYSIS</u>

In its prior Order, this Court determined that (1) Eagle was the prevailing party and that (2) the EEOC continued to litigate after it became clear that their suit was without foundation. Yet because the record was uncertain as to precisely when it became clear that the EEOC's suit was without foundation, the Court asked the parties for additional briefing "arguing their respective positions as to when the EEOC knew or should have known that it did not have jurisdiction over Eagle."

The Defendant Eagle responded by examining the evidence available to the EEOC and what that evidence revealed about the number of people employed by Eagle.  Although the Defendants do not select an exact date after which the EEOC should have known they had failed to meet the numerosity requirement, the Defendant's argument shows that the EEOC was never in possession of evidence to make its *prima facie* case from the beginning, and that the Commission's plodding investigation only served to highlight the foundational flaws in their

---

[3]The district court should be cautious in awarding fees "because it could discourage all but the most airtight of claims and undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII.." *Porter v. Milliken & Michael, Inc.*, 2001 WL 946355 at *2 (E.D. La. Aug. 17, 2001).

case.

The EEOC's briefing was considerably less helpful.  Instead of addressing the question posed by the Court directly, the Commission offers the Court no alternative date for which it should have become clear that their suit was without foundation.  According to their brief, "the EEOC did not know that it had no chance of success until the Court issued its Memorandum Opinion and Order granting the Defendant's motion for summary judgment."[4]  They make no attempt to explain their investigative or decision making processes, or to give the Court any guidance as to how they investigated and determined whether their claim against Eagle was valid.

In addition to claiming that they still have a valid claim against Eagle, the EEOC then attempted to shift the burden of refuting their *prima facie* case onto the Defendant for purposes of an attorney's fee award.  In their brief, they state that "If, as Defendant contends, this case was completely frivolous from the beginning, then the Court must ask why Defendant's counsel did not bring this to the Court's attention at the earliest possible time."  The Commission then argues that Eagle must have, in essence, mitigated the EEOC's potential liability by doing more to defeat the Commission's claim sooner, and without incurring costly fees.

Applying the same standards in a § 1983 case, the Fifth Circuit rejected a variant of this argument in *Myers v. City of West Monroe,* 211 F.3d 289, 292 (5th Cir. 2000).  The appellate court held that a prevailing defendant was not required to move for summary judgment on the plaintiff's frivolous claim as a precondition to receiving attorney's fees. *Id.*  The court refused to overanalyze the litigation tactics of the prevailing party, noting that the "lack of any pretrial

---

[4]The Commission still appears unconvinced that it has no chance of success, despite the Court's prior ruling. The EEOC spends at least one-third of its current brief attempting to relitigate the question of whether Eagle had enough employees to be subject to the Commission's mandate.

motions by the defendants should not be seen as conclusively establishing that [the Plaintiff's] claims were not frivolous." *Id.* at 292.

The EEOC wrongly asks the district court to do precisely what the Fifth Circuit declined in *Myers*. The Commission cannot claim its arguments are meritorious while simultaneously faulting the defendant for failing to defeat the EEOC's claims earlier because the Commission's arguments were so obviously deficient. And as *Myers* makes clear, the litigation responses of their adversary is not the controlling barometer of validity for the EEOC's claims. Finally, their citation to authority from *Cordoba* and the Eleventh Circuit is inapposite to the facts of their case, as the instant Defendant moved for and won summary judgment against the EEOC.

The Court finds that the *Tarrant Distributors* case cited by the EEOC offers a more helpful contrast to the current facts. In *Tarrant Distributors*, the EEOC established its *prima facie* case against the employer, only to have that case unravel upon further investigation. *E.E.O.C. v. Tarrant Distributors, Inc.*, 750 F.2d 1249, 1251 (5th Cir. 1984). After it learned, through its own diligence, that the case against the defendant lacked a solid foundation, the EEOC withdrew the case and ceased its investigation. In declining to award attorneys fees to the prevailing defendant, the appeals court noted that "the EEOC possessed sufficient evidence to establish a prima facie case" but that "discovery later disclosed [it] to be inadequately supported by available evidence." *Id.* at 1251. The court concluded that the "EEOC should be permitted to dismiss those cases subsequently determined to be marginal without risking assessment of the penalty of attorney's fees when the EEOC has otherwise acted in a reasonable manner." *Id.*[5]

---

[5]When the EEOC has acted to dismiss claims that became untenable, district courts have also refused to award the prevailing defendant attorneys fees. *See E.E.O.C. v. Greenbriar Pontiac-Oldsmobile-GMC Trucks-Kia, Inc.*, 314 F. Supp. 2d 581, 587-88 (E.D. Va. 2004) (declining to award prevailing defendant fees when EEOC

Unlike the Commission's work in *Tarrant Distributors*, the EEOC in this case failed to establish a critical element of its *prima facie* case by ensuring the target of its investigation was an employer.  Next, it failed to adequately use the discovery process to shore up this deficiency, while simultaneously ignoring highly probative evidence that the numerosity threshold was not met.  Finally, the Commission made no effort to voluntarily dismiss the case or cease the investigation after it should have been clear that there was insufficient evidence to meet the employer prong.

REVIEW OF EVIDENCE

Critical to the question of when the EEOC should have known that it had no basis to pursue its action against Eagle is exactly how evidence is evaluated by the agency in an ongoing investigation.  Assuming the agency acted in good faith, the EEOC has provided this Court with no explanation, affidavit, or argument on precisely how it weighed its ability to proceed against Eagle with the mounting evidence that conflicted with the Commission's ability to classify Eagle as an employer.[6]  Mindful of the Supreme Court's instruction in *Christiansburg* to abstain from playing a Monday morning quarterback, the Court must nevertheless examine the decision making of the EEOC in light of available evidence and controlling precedent to determine when

---

dismissed case after prima facie element was contradicted in deposition)*; E.E.O.C. v. Chandelle*, 506 F. Supp. 75, 77 (W.D. Okla. 1980) (refusing to award fees when EEOC "agreed to dismiss [improper defendant] as soon as it became clear" that it was mistaken).

[6]Had the EEOC chosen to directly respond to the Court's order, it could have described: (1) how it evaluated the "employer" status of the Defendant; (2) discovery mechanisms it used to flesh out its theory that the Defendant was an "employer"; (3) how it responded to the lack of any direct evidence that Eagle had the requisite number of employees; and (4) how each impacted the decision of the agency to continue to pursue the claim minus an ability to establish a *prima facie* case.

7

it continued to litigate after it was clear it could not prevail against Eagle.[7]

## (1) Evidence availaible before filing against Eagle

Prior to filing suit, the EEOC had at least three pieces of evidence relevant to whether Eagle fit the definition of "employer" as defined by the statute.  Although none of this evidence established that Eagle had enough employees to be considered an employer under the statute, at least one piece was ambiguous enough to warrant further investigation by the Commission in discovery.

First, the Commission had the affidavit of its original charging party, Kimberly Thomas, dated June 22, 2004.  Thomas's affidavit to the EEOC stated that "the store employs eight persons besides the manager." That document, which represented testimony foundational to the EEOC's case-in-chief, first put the Commission on notice that Eagle could be nearly half the size required to be deemed an "employer" for the Commission's purposes.[8]

Second, the EEOC had an additional affidavit of the charging party Kimberly Thomas, dated July 12, 2004.  This document corroborated the first affidavit, stating that "four blacks and

---

[7]In assessing fees against the plaintiff "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22.

[8]The Court finds the EEOC's characterization of Ms. Thomas's testimony highly unusual.  The Commission argues that "there was no reason for the EEOC to have given any weight (let alone controlling weight) to these comments of Ms. Thomas."  Those "comments" were the observation by Thomas that there were only eight other people employed at Eagle while she worked there in a management position.  Candidly, Thomas was ignorant of the statutory trigger of fifteen employees, and hence unaware of the "correct" answer for the Commission's purposes.  Yet this should make her statement all the more credible.  If there was "no reason...to have given any weight" to the factual observations of the foundational witness for the Plaintiff's case, the Court wonders exactly why the EEOC pursued the ultimately flawed claim in the first instance.

five whites are employed by the store." Again, sworn statements by their principal witness put the Commission on notice that Eagle did not have the mandatory number of employees.

Third, the EEOC had Eagle's payroll summaries from January 2003 through June 2004. Those documents included a summary of all past and present employees paid by Eagle for the stated time span. The summaries contained an additional notation as to which employees were current employees when the list was produced and which were no longer employed by the store.

The sum of these three pieces of evidence could not establish a *prima facie* case that Eagle was an employer for purposes of the statute. Even so, the payroll summaries were ambiguous enough that the EEOC might have wanted to further investigate these through deposition testimony. As such, the Court determines that the EEOC did not yet know that it could not maintain a claim against Eagle when it filed the lawsuit for purposes of an attorney's fee award.

### (2) Evidence that came to light during discovery

The depositions relevant to the EEOC's theory did not occur until the late summer and fall of 2006. By this time, the EEOC was presumably relying on an employee contact list generated by Eagle of more than 50 names, and the monthly payroll summaries discussed above, for its argument that Eagle met the statutory test. The documents alone neither established nor refuted the Commission's *prima facie* case, and hence further discovery and witness testimony could be used to decipher the meaning of these reports.

On August 3, 2006, Marsh Shores, a manager at Eagle, was deposed by both parties. She stated in her deposition that the employee contact list used by the EEOC was not a list of all

current employees, as the Commission argued.  In reality, it was a list of "everybody that had worked in the store since it opened." Shores further testified that she only managed "around eight" different employees at the store, and never said that the store employed more than fifteen employees at any given time.

If the EEOC was hoping to flesh out its theory of what that list meant in a deposition, Shores's testimony should have made clear that their theory had failed.[9]  The EEOC should have known that the *Walters* rule would not permit them to count employees after their employment relationship with Eagle had ended.  Moreover, the affidavit corroborated the initial statement by Kimberly Thomas that the "store employs eight persons besides the manager."

After the Shores affidavit, the Commission had one final opportunity to find evidence related to their theory with the deposition of Sherrie Kinton.  Using the payroll summaries produced by Eagle, the EEOC had maintained that merely because an employee did not appear on the payroll summary for a given pay period did not mean that they were not employed by Eagle at the time.[10]  But in her deposition, Kinton stated that when an employee was no longer on the payroll summary, they no longer worked at Eagle.  Therefore, their employment relationship with Eagle had ended under the *Walters* rule, and they could not be counted as employees for the EEOC's purposes.  Not only did Kinton's testimony not support the Commission's theory–it in

---

[9]Because the EEOC declined the opportunity to better inform the Court about its investigative tactics and decision making, the Court assumes that the agency sought in good faith to establish through deposition testimony a factual basis for their theory as to the meaning of the employee contact list.

[10]Based on a strict application of the *Walters* rule, this is correct, as the only factor that matters is "whether that employee started or ended employment during that year and, if so, when." *Walters v. Metro. Educ. Enter., Inc.,* 519 U.S. 202, 211 (1997). Yet *Walters* is merely a method to determine the existence of an employment relationship between the employer and the employee on the day in question.  The EEOC must still establish that this relationship exists, and evidence in the form of deposition testimony that the relationship did not exist undercuts any theory by the EEOC that employees who did not appear on payroll summaries remained employed.

fact directly refuted it.[11]

After November 22, 2006, the EEOC was in possession of all the evidence necessary for this Court to grant summary judgment for Eagle.[12]  At this time, the EEOC had no evidence which could establish a *prima facie* element of its case against Eagle.  The EEOC had properly investigated its theories based on the documents produced, and its theory that Eagle was an employer found no support in the record.  Though their investigation was proper, the Commission cannot be excused for obstinately ignoring the evidence that their inquiry produced simply because it conflicted with the agency's belief about the case.[13]

The Court finds that as of January 1, 2007, the EEOC should have known that it could not establish a *prima facie* element in its case against Eagle, and hence proceeded with a claim that was frivolous after that date.[14]  Whether a result of negligence, incompetence, or the force of bureaucratic momentum, the EEOC continued to litigate while missing evidence necessary lay a

---

[11]In addition, the dog that did not bark for the Commission's purposes is the dearth of employee testimony to refute the statements of Hinton or Shores.  If the Commission believed them unreliable or biased, it failed to significantly raise the issue of credibility either through cross examination or by deposing employees who would testify that Eagle employed more workers than Hinton or Shores claimed.  Instead, the Commission ignored these statements and pressed on, without obtaining any additional evidence to make its *prima facie* case.

[12]Simply losing a motion for summary judgment does not subject the non-movant to pay attorney's fees.  But the category of claims that cannot survive summary judgment range from those that are close questions to cases where the non-movant's claim is frivolous or without foundation.

[13]The EEOC is correct in arguing that the lack of more documentation made application of the *Walters* rule difficult.  Yet that does not excuse the EEOC from making its *prima facie* case, and when deposition testimony failed to support their interpretation of available records, they should have known their claim was without merit.

[14]With guidance from neither the EEOC nor any federal courts making a similar analysis, the Court selects this date with two primary motivations.  First, it is more than 30 days after which the EEOC received the final piece of evidence that conclusively established their inability to make their *prima facie* case.  Second, it is more than 15 days after the Defendant moved for summary judgment on precisely this same ground.  If the EEOC was merely negligent in piecing together the consequences of the Kinton affidavit, the Defendant's presentation of these facts should have been enough.  Some combination of the two events must have put the EEOC on notice that its attempt to classify Eagle as an "employer" was destined for failure.

foundational element of its case.  It responded in briefing opposed to the summary judgment

motion by citing documents it created as evidence of employer status, erroneously relying on W-

2 forms that contradict the *Walters* test, and assigning their own interpretation to payroll

documents that had no support in the record by the authors and authenticators of those

documents.[15]  As the Court found in granting summary judgment for the Defendant, the EEOC's

arguments failed to raise any genuine issue of material fact as to whether Eagle met the statute's

definition of employer.  And despite the EEOC's attempt to resurrect a number of them in the

current briefing, the Court finds that pressing of these claims after the submitted evidence was

accumulated was groundless and without justification.

     In their briefing, the EEOC argues that to assess fees against the Commission, this Court

would be applying a more stringent standard against the EEOC than that governing fee awards

against private plaintiffs.  The Commission is correct in noting that the proper standard is the

same, and this Court does not hold the Commission to any standard different than that of an

ordinary plaintiff.  However, the Supreme Court in *Christiansburg* noted that "a district court

may consider distinctions between the Commission and private plaintiffs in determining the

reasonableness of the Commission's litigation efforts." *Id*. at 423 n.20.

     Unlike a regular plaintiff, the EEOC possesses an abundance of expertise to help

determine when an entity is an employer under the act.  In making that determination, the

Commission is no doubt familiar with the pitfalls in investigating small entities with meager

---

[15]District courts have routinely denied attorneys fees to moving defendants when the EEOC had put evidence into the record that if the finder of fact had "credited the EEOC's evidence, then the EEOC would have prevailed." *See E.E.O.C. v. Safeguard Chemical Corp*., 166 F. Supp. 2d 810, 816 (S.D.N.Y. 2001).  Yet the instant record offers no such evidence, as the EEOC neither controverted the deposition testimony arguing Eagle had less than ten employees nor offered any testimony to establish their interpretation of the employer records.

employment records like Eagle.  While a regular plaintiff might be unsure how the documents

produced in this case impact their claim, the EEOC can plead no such ignorance.  As such, there

is a significant distinction in how the Court can and does view the reasonableness of the EEOC's

litigation efforts compared with those of a less sophisticated litigant, while the standard of

frivolity remains unchanged.

Finally, finding that the EEOC should have known that Eagle was not an employer under

the statute necessary to award fees to the prevailing defendant does not put an inordinate burden

on future plaintiffs or the Commission itself.  Unlike credibility determinations, satisfying the

numerosity requirement of the statute turns not on subjective determinations of the finder of fact,

but on the empirical evidence and employment records of the defendant.[16]   There is no reason to

believe that awarding fees due to the EEOC's failure to properly interpret these records and apply

controlling precedent would necessarily chill their exercise of authority under the statute.

As the Supreme Court argued in *Christiansburg*, many defendants in Title VII actions

"are small and moderate size employers for whom the expense of defending even a frivolous

claim may become a strong disincentive to the exercise of their legal rights."  *Christiansburg*,

434 U.S. at 422 n.20.  This logic is all the more fitting to an entity too small to even be

considered an employer by the Commission.  The EEOC, acting as an agent of the United States,

"has an obligation to its citizens not to subject them to unnecessary litigation." *E.E.O.C. v. E.J.

Sacco, Inc.*, 102 F. Supp. 2d 413, 419 (E.D. Mich. 2000).  And when the Commission oversteps

the bounds of advocacy, and presses a weak claim to the point of frivolity, it should rightfully

---

[16]*See E.E.O.C. v. Northwest Structural Components, Inc.*, 897 F. Supp. 249, 252 (M.D.N.C. 1995) (finding questions of credibility were ill suited for certainty necessary to shift fees to a prevailing defendant).

pay costs the same as any other litigant.

## <u>CONCLUSION</u>

Because the EEOC knew or should have known that Eagle did not meet the definition of "employer" after January 1, 2007, the Court assesses attorney's fees generated after that date. These include $15,595 in attorney's fees for hours billed by Kimberly Guthrie, beginning January 4, 2007, and calculated through October 24, 2007, as well as $20,011 in attorney's fees for hours billed by Lyneille Williams, beginning January 8, 2007, and calculated through October 24, 2007. The combination makes the total fee award **$35,606.00** as calculated by the Court. The Court further finds that the hourly rates and number of hours billed by these attorneys is supported by affidavit and is significantly below what has been found reasonable for similar work by equally qualified attorneys in prior cases within this district. And because the affidavits as to the reasonableness of the hourly rate and number of hours billed were not seriously controverted by the EEOC, the Court finds that the overall fee award is reasonable.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff EEOC is hereby ordered to pay attorney's fees to the prevailing Defendant Eagle in the amount of $35,606.

SO ORDERED AND ADJUDGED on this, the 29th day of November, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT COURT JUDGE